UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                              Chapter 11

TOWER AUTOMOTIVE, INC., *et al.*,                   Case No. 05-10578 (ALG)

                              Debtors.   Jointly Administered

------------------------------------------------------------------x
TOWER AUTOMOTIVE MEXICO,
S. DE R.L. DE C.V.,

                              Plaintiff,

       -against-                                  Adv. Proc. No. 06-1301 (ALG)


GRUPO PROEZA, S.A. DE C.V. f/k/a
PROMOTORA DE EMPRESAS ZANO
S.A. DE C.V.,

                              Defendant.

------------------------------------------------------------------x

## MEMORANDUM OF OPINION

A P P E A R A N C E S:

KIRKLAND & ELLIS, LLP
Counsel for Tower Automotive, Inc. and
 Tower Automotive Mexico, S. de R.L. de C.V.

  By:  John F. Hartmann, Esq.
        Anup Sathy, Esq.
        Michael A. Duffy, Esq.
200 East Randolph Drive
Chicago, Illinois 60601

  By:  Lisa Laukitis, Esq.
153 E. 53rd Street
New York, New York 10022

WACHTELL, LIPTON, ROSEN & KATZ
Counsel for Grupo Proeza, S.A. de C.V.

  By:   Douglas K. Mayer, Esq.
        Philip Mindlin, Esq.
        Emil A. Kleinhaus, Esq.
51 West 52nd Street
New York, New York 10019

STUTMAN TREISTER & GLATT
Counsel for Official Committee of Unsecured
 Creditors of Tower Automotive Corp., Inc., *et al.*

  By:   Eric D. Goldberg, Esq.
1901 Avenue of the Stars
Los Angeles, California 90067

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

On February 2, 2005, Tower Automotive, Inc. and twenty-five of its subsidiaries and affiliates filed petitions under Chapter 11 of the Bankruptcy Code. One of the filing entities was R.J. Tower Corporation ("RJ Tower"), a holding company that owns the stock of some or all of the group's foreign subsidiaries and that is in turn owned by Tower Automotive, Inc. Some of the foreign subsidiaries filed under Chapter 11, but others did not.

On February 22, 2006, one of the foreign subsidiaries that did not file, Tower Automotive Mexico S. de R.L. de C.V. ("Tower Mexico"), commenced in this Court an adversary proceeding against Group Proeza, S.A. de C.V. ("Proeza"). The complaint alleges that Tower Mexico and Proeza are parties to a Joint Venture Agreement providing for the formation of a manufacturing operation in Mexico and containing a broad agreement to arbitrate disputes in Paris in accordance with the rules of the International Chamber of Commerce. The complaint further alleges that Proeza has attempted to

2

subvert its agreement to arbitrate by commencing litigation in the Mexican courts in reliance on a provision in a Shareholders' Agreement, also between Tower Mexico and Proeza, providing that disputes between the shareholders relating to the by-laws shall be heard by the courts of the City of Monterrey, Mexico. The adversary proceeding seeks to compel Proeza to honor its agreement to arbitrate and to terminate the Mexican litigation.

Proeza has moved to dismiss the adversary proceeding on multiple grounds, asserting that this Court lacks jurisdiction over the subject matter of this proceeding, that there is no personal jurisdiction over Proeza, and that even if there were jurisdiction, this Court should defer to ongoing proceedings in Mexico on comity principles or dismiss this case on grounds of *forum non conveniens*. Tower Mexico, on its own behalf and on behalf of the Debtors, has responded, and the Official Creditors Committee has moved to intervene in support of their position.

For the reasons stated below, this Court has no jurisdiction over the subject matter of this dispute, and the complaint must be dismissed on that basis. There is no occasion to reach any of Proeza's other defenses or to decide the motion to intervene.

Jurisdiction over the Subject Matter

28 U.S.C. § 1334(b) provides in relevant part that the district courts (and by referral this Court) have original but not exclusive jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." There is no dispute that this Court's jurisdiction arises, if at all, under the "related to" rubric of § 1334(b). The leading definition of "related to" jurisdiction is the formulation of the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), where the Court held that a proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could

conceivably have any effect on the estate being administered in bankruptcy." The Court continued:

> Thus the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

743 F.2d at 994. The Supreme Court has cited this test with approval, although it did not expressly adopt the definition (referring among other things to the "slightly different test" utilized by the Second Circuit in *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983)). *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, n. 6 (1995). However, the test has been adopted by the First, Fourth, Fifth, Sixth, Eighth, Ninth and Eleventh Circuits.[1] In *Publicker Indus. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110 (2d Cir. 1992), decided after *Celotex*, the Second Circuit joined most of the other circuits in expressly accepting the *Pacor* test, holding that a proceeding falls within the Bankruptcy Court's "related to" jurisdiction if it has a "significant connection" to the bankruptcy case, as formulated by *In re Turner*, 724 F.2d at 341, or if there is a "conceivable effect" on the estate, as set forth in *Pacor*. Although the dispute in *Cuyahoga* was between two non-debtors, the Circuit Court found that there was jurisdiction in the bankruptcy court to approve a settlement because the parties' respective claims "bring into question the very distribution of the estate's property and its allocation between a party asserting the status of constructive trustee and a first priority secured creditor." 980 F.2d at 114. Since

---

[1] *See In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002, n11 (4th Cir. 1986), *cert denied*, 479 U.S. 876 (1986); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987); *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 583-84 (6th Cir. 1990); *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987); *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988); *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990); *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990).

4

*Cuyahoga,* courts in this Circuit have found that there is no meaningful difference between the standards articulated by *Turner* and *Pacor* and that "the existence of a 'conceivable effect' on the bankruptcy now establishes 'related to' jurisdiction under Section 1334(b)." *ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Communications Corp.)*, 285 B.R. 127, 137 (Bankr. S.D.N.Y. 2002).

The Debtors and the Creditors Committee embrace the *Pacor* definition and contend that the results of the adversary proceeding will have not only a "conceivable effect" on the RJ Tower estate but a very real impact on the distribution that its creditors can expect. The Court does not doubt the Debtors' contention that Proeza's ability to undo or terminate the Joint Venture through action in the Mexican courts would have a major impact on the projected distribution to the RJ Tower creditors. Nevertheless, the impact on the creditors of the RJ Tower estate will result only from a diminution in value of RJ Tower's investment in the stock of its subsidiary, Tower Mexico. This is not enough to provide this Court with jurisdiction over a dispute between Tower Mexico, a non-filing subsidiary, and a third party.[2]

In *Feldman v. Beck Industries, Inc. (In re Beck Industries, Inc.)*, 479 F.2d 410 (2d Cir. 1973), the Second Circuit held that bankruptcy jurisdiction did not extend so far as to permit a referee to restrain state court proceedings against a wholly-owned subsidiary of the debtor, even though the value of the debtor's stock holdings in the subsidiary would be directly impacted by the results of the state litigation. Quoting its prior decision in *In re Gobel, Inc.*, 80 F.2d 849, 852 (2d Cir. 1936), the Circuit Court held that "mere financial interest of a bankrupt estate in the outcome of the litigation pending in state

---

[2] R.J. Tower was apparently an original party to the Joint Venture Agreement in Mexico, but it assigned its rights to Tower Mexico years ago and no longer has a direct interest therein. The Debtors do not base jurisdiction on the argument that one of the Debtors was once a party to the Joint Venture Agreement.

5

courts does not authorize the issuance of an injunction against such prosecution." 479 F.2d at 416. The only exception to this principle, according to the *Beck* Court, would be proof that the subsidiary "was a mere sham or conduit rather than a viable entity." *Id.* There is no contention here that Tower Mexico is a "sham or conduit" or anything other than a viable and, apparently, valuable separate entity in its own right. The Debtors and Committee argue that *Beck* is not controlling because it was decided under the prior Bankruptcy Act and did not take account of the expansion of bankruptcy jurisdiction in the 1978 Code, as evidenced by the breadth of the *Pacor* definition of "related to" jurisdiction. Even though the 1978 Bankruptcy Code broadened the jurisdiction of this Court, bankruptcy jurisdiction is still limited, and there is no indication in the legislative history of the 1978 Code that the rule in *Beck* would be overruled. Since 1978 several courts in this circuit have expressly held that it was not. *See Mego Intl., Inc. v. Packaging & Assembly Mfg. Corp. (In re Mego Intl., Inc.)*, 30 B.R. 479 (S.D.N.Y. 1983); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("*Beck* is still good law even though decided under the old Bankruptcy Act.").[3] Courts that have long been governed by the *Pacor* formulation have also held that a lawsuit that impacts only the value of a debtor's subsidiary is not within the "related to" jurisdiction of the bankruptcy court. *See Equity Broadcasting Corp. v. Shubert (In re Winstar Communic., Inc.)*, 284 B.R. 40, 51 (Bankr. D. Del. 2002), where the Court stated that an action which may have an impact on the value of a debtor's subsidiary

> does not alter the estate's rights, liabilities, options or freedom of action. If the court were the find that this action was under the jurisdiction of the Bankruptcy Court, the decision would have the result of bringing every

---

[3] Just as the courts in this Circuit have continued to follow the *Beck* principle after adoption of the Bankruptcy Code, Judge Friendly's pre-Code formulation of jurisdiction in *Turner* ("significant impact") has continued to be good law.

6

> wholly owned subsidiary into every Bankruptcy case regardless of the circumstances and without the safeguards afforded by schedules, statements of financial affairs, notices to creditors, or meetings of creditors.

*See also Fitzgeralds Sugar Creek, Inc. v. Kansas City Station Corp. (In re Fitzgeralds Gaming Corp.)*, 261 B.R. 1, 6-7 (Bankr. W.D. Mo. 2001); 1 NORTON BANKR L. & PRAC. 2d § 4:113 (2005).

In any event, despite the breadth of the "conceivable impact" formulation in *Pacor*, there is nothing in that decision that suggests that a dispute that only indirectly impacts a bankruptcy estate -- by affecting the value of one of its assets -- comes within "related to" bankruptcy jurisdiction. The *Pacor* decision itself, as quoted above, held that "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." 743 F.2d at 994. The adversary proceeding at bar does not alter RJ Tower's rights, liabilities, options or freedom of action, and it does not impact the handling and administration of the bankruptcy estate over which this Court has jurisdiction. Proeza has not claimed that any of the Debtors are liable to it and has not filed a proof of claim against any Debtor. Nor is there any indication that the results of the Mexican litigation will directly impact any of RJ Tower's liabilities. The Debtors still own the stock of their subsidiary, and the fact that it may be worth less if they cannot compel Proeza to withdraw its Mexican lawsuit in favor of arbitration does not create jurisdiction that this Court would not otherwise have.

The Debtors have not been able to formulate any principled basis for a holding that a bankruptcy court has jurisdiction over a dispute involving a non-filed subsidiary without the court thereby acquiring jurisdiction over any dispute involving such subsidiary, so long as the resolution of that dispute could have a significant impact on the value of the entity. For example, a Chapter 7 debtor's distributable assets might consist exclusively of the stock of a multinational corporation, but that happenstance would not give the bankruptcy court jurisdiction of a patent or antitrust dispute involving that corporation, no matter how important to its financial well-being.[4]

The Creditors Committee suggests that Proeza's lawsuit in Mexico interferes with the collateral package provided to the Debtors' lenders under the debtor in possession (DIP) financing arrangements approved by this Court at the outset of these cases. However, the lenders do not have a security interest in the Joint Venture or in any of the property of Tower Mexico. They have a lien on the stock of Tower Mexico that is the property of RJ Tower, but even the extensive litany of protections given them in the DIP financing order does not guarantee them that the stock will have any particular value. The Mexican litigation may diminish the value of that stock to the disadvantage of the DIP lenders as well as RJ Tower and all of its other creditors, but that does not provide a basis for § 1334 "related to" jurisdiction.

---

[4] The Debtors rely on three cases in this Circuit, none of which discusses *Beck* and each of which is distinguishable. In *In re Adelphia Communic. Corp.*, 285 B.R. at 138-39, one of the debtors was a direct party to the joint venture agreement at issue and two of the debtors would be jointly and severally liable for damages and expenses depending on results of the litigation. In *Carver v. Brecher (In re Carver)*, 144 B.R. 643, 647 (S.D.N.Y. 1992), the debtor was general partner of the partnership at issue in the litigation and the results of the case would directly impact his personal liabilities. In *In re Lawrence*, 233 B.R. 248, 252-53 (N.D.N.Y. 1999), the issue was costs and fees for opposing removal and whether the Bankruptcy Court's jurisdiction was "arguable." The Committee also cites *Anderson v. HSN (In re Donovan)*, 2005 Bankr. LEXIS 481 (Bankr. N.D. Ga. Feb. 9, 2005), where the Court sustained jurisdiction based on the impact a dispute would have on the assets of a non-filing subsidiary. *Donovan* did not have to consider the effect of the *Beck* decision and does not explain how *any* substantial dispute involving a debtor's subsidiary would not come within bankruptcy jurisdiction under its rationale.

It is a basic principle of bankruptcy law that each separate individual or corporate entity must file a separate bankruptcy petition and that each entity is treated separately unless grounds for substantive consolidation are demonstrated.  *See Federal Deposit Ins. Corp. v. Colonial Realty Co.*, 966 F.2d 57, 58 (2d Cir. 1992).  Tower Mexico has remained out of bankruptcy, allowing it to continue in business free of the burdens of the Bankruptcy Code, to pay its separate creditors and to maintain its business relationships without bankruptcy entanglement.[5]  As a necessary concomitant, under the facts of this case, the Debtors cannot bring into this Court a third-party dispute such as the controversy with Proeza under the rubric of § 1334(b) jurisdiction.  The complaint must be dismissed for lack of subject matter jurisdiction.

Proeza is directed to settle an order on five days' notice.

Dated: New York, New York
       December 7, 2006

                                        */s/ Allan L. Gropper*_____
                                        UNITED STATES BANKRUPTCY JUDGE

---

[5] Contrary to the Committee's argument, the litigation in Mexico does not implicate the automatic stay of § 362 of the Bankruptcy Code because Tower Mexico is not a debtor.

9